IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH ANTHONY PETKAVICH,                )
                                         )
            Plaintiff,                   )
                                         )
      vs.                                )        Civil Action No. 20-258-E
                                         )
ANDREW M. SAUL,                          )
*Commissioner of Social Security*,       )
                                         )
            Defendant.                   )

ORDER

AND NOW, this 30th day of November 2021, the Court has considered the parties'

arguments for summary judgment and will order judgment in the Commissioner of Social

Security's ("Commissioner") favor except as to costs.[1]  Thus, the Court will affirm the decision

denying Plaintiff's applications for disability insurance benefits and supplemental security

income under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, and Title XVI

of the Act, 42 U.S.C. § 1381 *et seq.,* because the decision is supported by substantial evidence

and the Administrative Law Judge ("ALJ") did not legally err.  *See* 42 U.S.C. § 405(g); *Biestek*

*v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d

761, 777 (W.D. Pa. 2013) (citations omitted) (explaining that the district courts' review is

plenary for "all legal issues" but that the courts review findings of fact for substantial evidence).[2]

---

[1]     The Commissioner asks that costs be taxed against Plaintiff in his motion but does not
argue costs in the accompanying brief.  As the Commissioner has offered no "assistance in
evaluating" the request, the Court will deny that aspect of the Commissioner's motion.  *Pa.
Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996).

[2]     After Plaintiff's applications for benefits under the Act were denied by the ALJ, Plaintiff
sought review before the Appeals Council and submitted for its consideration a supplementary
opinion from his treating psychiatrist, Dr. McGorrian.  The Appeals Council decided that there
was not "a reasonable probability" that the opinion would change the original outcome, declined
to exhibit the evidence, and denied Plaintiff's request for review.  (R. 1—2).  Upon the Appeals

1

Council's denial of Plaintiff's request, the ALJ's decision became the final decision for purposes of review.  20 C.F.R. §§ 404.981, 416.1481.  Plaintiff has sought this Court's review of the decision and now pending before the Court are Plaintiff and the Commissioner's motions for summary judgment.

Plaintiff asks the Court to reverse the ALJ's decision or remand this matter to the Commissioner for further proceedings for four reasons.  First, Plaintiff argues that the Appeals Council erroneously found it was unlikely that Dr. McGorrian's supplementary opinion would change the outcome.  Second, Plaintiff argues that the ALJ should have afforded Dr. McGorrian's opinions substantial or controlling weight, and further argues that the ALJ similarly denied the consultative examiner's ("CE") opinion appropriate weight.  Third, Plaintiff argues that the ALJ failed to articulate a rational basis for rejecting his subjective representation of his symptoms.  Fourth, Plaintiff argues that the ALJ failed to present all his limitations to the vocational expert ("VE"), therefore, it was inappropriate for the ALJ to rely on the VE's testimony in his decision.  As explained herein, the Court is unpersuaded by Plaintiff's arguments and will affirm the decision denying his applications for benefits.

The Court first addresses Plaintiff's argument that the Appeals Council erred in its consideration of Dr. McGorrian's supplementary opinion.  Reviewing courts may only consider an Appeals Council decision when the Council has "accepted [a] case for review and made a decision on the merits."  *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) (citing *Eads v. Sec'y of Dep't of Health & Hum. Servs.*, 983 F.2d 815, 817 (7th Cir. 1993)).  The courts have "[n]o statutory authority . . . to review the Appeals Council decision to deny review."  *Id.* at 594. Because the Appeals Council denied Plaintiff's request for review, the Court may not entertain Plaintiff's contention that the Council wrongly decided it was unlikely that Dr. McGorrian's supplementary opinion would change the outcome.  The Court does, however, have the authority to itself consider whether Dr. McGorrian's supplementary opinion warrants remand and, to that end, asks whether the opinion is "new and material" and whether "there was good cause why it was not previously presented to the ALJ (Sentence Six review)."  *Id.* at 593.  Plaintiff argues this evidence is new because it postdates the ALJ's decision and material because it provided the "specific vocational limitations" the ALJ found Dr. McGorrian's initial opinion lacked.  (Doc. No. 19, pgs. 14, 17).  However, Plaintiff proffers no "good cause" explanation for his failure to obtain this evidence in time to present it to the ALJ.  Therefore, even assuming Plaintiff could establish Dr. McGorrian's supplementary opinion was new and material, remand is unwarranted because Plaintiff has not established good cause.  *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 360 (3d Cir. 2011) (faulting the claimant for her failure to explain why she could not have obtained certain medical opinions in time to present them to the ALJ).  Further, the Court must exclude the supplementary opinion from its consideration of Plaintiff's other arguments because the Court may not evaluate the ALJ's decision based on evidence that was never presented to him.  *Matthews*, 239 F.3d at 594.

Plaintiff's next argument is that the ALJ afforded Dr. McGorrian's initial opinion and the CE's opinion insufficient weight in his consideration of the medical opinion evidence.  Plaintiff argues that those two opinions supported a more restricted residual functional capacity ("RFC") than the ALJ formulated, therefore, neither the RFC nor the decision are supported by substantial evidence.  The RFC is an administrative finding of fact that affects steps four and five of the five-step evaluation ALJs use to evaluate disability.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)—(v), 416.920(a)(4)(i)—(v).  At the first step in the evaluation, the ALJ makes sure that the claimant is not engaged in "substantial gainful activity;" second, the ALJ must identify at least one "medically determinable physical or mental impairment" the claimant suffers from that is "severe" and durationally sufficient; third, the ALJ compares the claimant's impairment(s) to criteria for presumptively disabling impairments; fourth, the ALJ determines whether the claimant can return to "past relevant work" with his RFC; and finally, if the claimant cannot return to past work, the ALJ determines whether an adjustment to "other work" is possible with the claimant's RFC and vocational characteristics.  *Id.*; *Sweeney v. Comm'r of Soc. Sec.*, 847 F. Supp. 2d 797, 800 (W.D. Pa. 2012).  The claimant will be found disabled if he suffers from a presumptively disabling impairment or its equal at step three, or if his RFC prevents his return to past relevant work and his RFC and vocational characteristics impede his adjustment to other work.  *Id.* §§ 404.1520(a)(4)(iii)—(v), 416.920(a)(4)(iii)—(v).

The RFC, which is critical to the ALJ's findings at steps four and five, is "the most [a claimant] can still do despite [his] limitations."  *Id.* §§ 404.1545(a)(1), 416.945(a)(1).  It must be based on "all the relevant evidence."  *Id.*  Medical source opinion evidence and prior administrative medical findings are particularly informative, and before March 27, 2017, treating physician opinions were "entitled to substantial and at times even controlling weight."  *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001).  Under the new regulations for applications, like Plaintiff's applications, filed on or after March 27, 2017, medical opinions are no longer entitled to deference or "any specific evidentiary weight, including controlling weight."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, ALJs consider a medical opinion's persuasiveness based on its supportability, consistency, the source's relationship with the claimant, specialization, and other factors.  *Id.* §§ 404.1520c(b)—(c), 416.920c(b)—(c).  Supportability and consistency are the most important of the factors.  *Id.*  The ALJ's consideration of the medical opinion evidence must, of course, be sufficiently documented in the decision to permit "meaningful judicial review."  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).  And if the ALJ rejects medical opinion evidence, he may not do so "for no reason or [for] the wrong reason."  *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993) (citing *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981)).

Here, the ALJ included the opinion evidence (R. 30), Plaintiff's allegations (R. 26—27), and the objective medical evidence in the record (R. 27—29, 31) in his formulation of Plaintiff's RFC.  Evaluating the opinion evidence, the ALJ noted the CE's opinion that Plaintiff was, among other things, moderately to markedly limited in his interactions with others.  (R. 28).  However, the ALJ explained that he found the CE's opinion unpersuasive because it was inconsistent with Plaintiff's "stable examinations," lack of emergency treatment, cooperativeness at exams, and normal behavior.  (R. 28).  Similarly, when the ALJ considered Dr. McGorrian's initial opinion, he acknowledged that she opined Plaintiff's bipolar disorder was "severe" and

"hard to stabilize." (R. 29). However, the ALJ ultimately found the opinion unpersuasive because Plaintiff had demonstrated stability during the relevant period. (R. 29). The ALJ added that Dr. McGorrian had not "assess[ed] the claimant with specific vocational limitation, and she provided little rationale for her opinion." (R. 29). Plaintiff claims the ALJ's explanations for finding these opinions unpersuasive are wrong or inadequate. He disputes the ALJ's characterization of his condition during the relevant period as stable and points to treatment records from that time that indicate he displayed an anxious mood, blunted affect, fair-to-poor insight and judgment, irritability, and suicidal thoughts. (Doc. No. 16, pgs. 13—14 (citing R. 650, 652, 655, 657)).

Despite Plaintiff's account of the record and its relation to the opinion evidence, the Court is satisfied that the ALJ appropriately considered the medical opinion evidence and avoided rejecting such evidence without reason or for the "wrong reason." *Mason*, 994 F.2d at 1066. The ALJ ultimately described Plaintiff as stable during the relevant period, but he did not ignore evidence of Plaintiff's difficulties. For example, the ALJ acknowledged that Plaintiff reported experiencing "negative thoughts," "suicidal thoughts," and anxiety. (R. 28). The ALJ also acknowledged that during the relevant period, Plaintiff was "struggling with depression and anxiety," had concern he might be jailed for DUI, and was trying to cope with his brother's death. (R. 29). The ALJ weighed that evidence against evidence that indicated Plaintiff was stable, like his treatment records from Clarion Family Therapy showing he demonstrated an appropriate mood; logical, goal-directed, coherent, and relevant thought processes; and adequate concentration. (R. 29, 613, 615). In the end, the evidence that tended to show Plaintiff's stability convinced the ALJ that the CE and Dr. McGorrian's opinions were unpersuasive, as did the lack of any specific vocational limitations and sparse rationale in Dr. McGorrian's opinion. That explanation is adequately detailed to facilitate the Court's review, and because the ALJ supported his decision in this regard with evidence in the record, the Court will not undertake to reweigh the evidence here. *See Chandler*, 667 F.3d at 359. It is also evident that though the ALJ did not "use particular language or adhere to a particular format in conducting his analysis," *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), he considered the appropriate regulatory factors—particularly supportability and consistency. Additionally, to the extent Plaintiff argues any lack of specific vocational limitations in Dr. McGorrian's initial opinion was cured by her supplementary opinion, the Court has explained that it cannot evaluate the ALJ's decision with evidence the ALJ had no opportunity to consider. *See Matthews*, 239 F.3d at 594.

Plaintiff also argues that the ALJ failed to articulate a rational basis for rejecting his representation of his symptoms and their limiting effect. However, so long as the ALJ's findings concerning a claimant's symptoms and limitations are supported by substantial evidence, they are conclusive. *Linn v. Saul*, No. CV 18-1586, 2020 WL 978562, at *6 (W.D. Pa. Feb. 28, 2020); *Mastrocesare v. Saul*, No. CV 20-347, 2021 WL 2434587, at *1 n.2 (W.D. Pa. June 15, 2021) (citing *Duncan v. Sullivan*, 786 F. Supp. 466, 470 (E.D. Pa. 1992)). In this case, the ALJ followed the correct procedure for considering Plaintiff's symptoms, outlined in Social Security Ruling 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). He appropriately determined that Plaintiff's medically determinable impairments could produce the symptoms Plaintiff alleged.

(R. 29).  He further found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the] symptoms . . . not entirely consistent with the medical evidence and other evidence in the record."  (R. 29).  ALJs are more likely to find symptoms will limit a claimant's work abilities if the claimant's representation of his symptoms is internally consistent and consistent with other evidence in the record.  SSR 16-3P, 2021 WL 2434587, at *9.  Those considerations guided the ALJ here when he noted that Plaintiff alleged difficulty communicating, concentrating, and remembering tasks.  (R. 27).  He further considered that Plaintiff indicated he was prone to isolating himself, manic episodes, binge drinking, depressive episodes, and absenteeism.  (R. 27).  The ALJ compared those representations to other evidence including instances where Plaintiff's employment terminated for reasons unrelated to limitations arising from his impairments, like drinking alcohol the evening before work.  (R. 30). Ultimately and in consideration of all the evidence, the ALJ concluded that Plaintiff was less limited than his own representations suggested.  Because the ALJ's explanation is sufficient to permit review, and his rationale for discounting Plaintiff's representation of his symptoms is supported in the record, the ALJ's findings are conclusive.

Plaintiff's final argument concerns the ALJ's reliance on the VE's testimony.  At steps four and five, ALJs often rely on VE testimony to determine whether a claimant can return to past work or adjust to other work.  *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). ALJs generally ascertain the VE's professional opinion through a series of hypothetical questions premised on "certain assumptions about the claimant's physical capability."  *Id.* (citation omitted).  The ALJ may rely on the VE's testimony in the decision if the ALJ "accurately portray[ed] the claimant's individual physical and mental impairments" to the VE.  *Id.* at 553— 54 (citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).  That does not mean the ALJ must include "every impairment *alleged* by a claimant" in the operative hypothetical.  *Id.* at 554.  Rather, "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*."  *Id.*

In this case, the ALJ presented several hypothetical questions to the VE.  (R. 86—88).  At the hypothetical the ALJ identified as "hypothetical five," the ALJ asked the VE whether an individual with Plaintiff's vocational characteristics, the ability to work at all exertional levels, limited to simple tasks and no more than occasional interaction with others, who could be expected to be absent for three days in a row every six months would be able to return to Plaintiff's past work.  (R. 86—88).  The VE testified that such an individual could return to Plaintiff's past work.  (R. 88).  Relying on that testimony, the ALJ found Plaintiff could return to past work at step four and, thus, determined Plaintiff was not disabled.  (R. 31).  Plaintiff argues that, in his decision, the ALJ ignored the VE's further testimony that employers would tolerate just one or two no-call, no-show absences and eight total absences per year.  Plaintiff points to his history to suggest he would exceed eight absences in a year.  This objection to the ALJ's reliance on the VE's testimony "boil[s] down to [an] attack[] on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n.8.  The Court has already addressed Plaintiff's challenge to the RFC in this matter and has found the RFC is adequately supported by the record.  Because the

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment

(Doc. No. 15) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 17) is

GRANTED in part and DENIED in part, as specified above.

/s Alan N. Bloch
United States District Judge

ecf:    Counsel of Record

---

operative hypothetical question included the number of absences the ALJ included in the RFC,
the ALJ appropriately relied on the VE's response in the decision.  For this and the foregoing
reasons, the Court finds the agency's final decision admits no legal error and is supported by
substantial evidence.